My name is Dean Overstreet. I'm from Little Rock and I represent the appellant here today, J-McDaniel Construction Company. They are the plaintiff below. The basic facts of this case, and I'll state them very quickly. J-McDaniel is a general contractor. Counsel, could you raise your podium a little bit there? J-McDaniel is a general contractor building residences in Little Rock. This claim arose out of the construction of a home. He had used subcontractors in building the home. One of possibly two subcontractors, don't know which one, was negligent in the installation of their work, installation of plumbing or the excavation work that was done. That work and the problem that resulted from that work caused other damages to the home. Eventually, Mr. McDaniel resolved that case. Mr. McDaniel then filed a lawsuit against his insurance company seeking reimbursement for his losses under the comprehensive general liability policy. That claim was denied and this lawsuit was filed. There are really two issues on appeal here today. The first issue centers around the definition of occurrence and the application of the Essex Rule from Arkansas. Our position is, and it's argued in the brief, is that the Essex Rule is old, it's outdated, and if the Arkansas Supreme Court were presented with a similar situation like we're seeing here today, that they would overrule the Essex Rule. That's partly because of two things. Number one, there's a trend nationwide to leave the old occurrence rule, which is the rule of Essex, which is now the minority rule in the country. Cases such as Lamar and K&L Homes, which are cited in the brief, have gone the other way in favor of this modern trend to do away with this strict definition of the occurrence rule. The K&L Home case, in fact, actually reversed the Supreme Court of North Dakota, actually reversed itself from a case that was only a few years old, to change its application and interpretation of the occurrence rule. There are a number of reasons why I think the court should look at this issue. I readily admitted that federal courts are to follow state law when they can. Counsel, if I follow you, you're essentially asking or telling us that the existing Supreme Court president in the state of Arkansas would not be in your favor. That's correct, Your Honor. The Essex Rule would not be in our favor. And that interpretation of occurrence is a problem for Mr. McDaniel's claim. So we're asking the court, we asked the lower court to look at that rule and to determine in light of the circumstances what would the Supreme Court's decision be if it were faced with a similar case at this point. Now, significantly, in addition to the other changes in case law that had come down around the country, another significant factor is that after Mr. McDaniel's claim arose, the Arkansas General Assembly passed new law basically rectifying what was believed to be the problem with the Essex Rule. Did the state legislature make its new provision retroactive? No, Your Honor, it did not. And that's an issue in this case, and it's been argued by the defendant, that that would preclude the application of the statute. And I would admit that the retroactivity of the statute is not there, but I think the statute is certainly guidance as to what the law ought to be. And I think it's significant that when you look at the law and what the law is now, if the Supreme Court were presented with this question today, it could choose to override Essex just like had been done in a number of other cases around the country. So even though the statute was not retroactive, the Supreme Court could have done that. And I think you have to look at that statute and give it some credence about how it applies to the existing law. And that is one factor that comes into play. Why shouldn't this court defer to the Supreme Court of Arkansas to determine whether or not it chooses to reverse its precedent? Well, Your Honor, I think that this court, above all, tries to make a decision that's fair and equitable. And it can do that any number of ways. It could certify the question, which has been done in similar cases in Arkansas and these construction cases when there was a dispute over some term of the policy, such as an occurrence. So we see that there are a number of ways the court can get to this. But in this particular case, I think it was specifically important in light of the changing law around the country. Did you ask the district court to certify the question? We did not, Your Honor. And my understanding is that there's no rule that requires me to do that. And the authority that I've seen indicates that the court is actually in the best position to know whether it needs to certify that question. And it's certainly the court's prerogative to do so. And it's this court's prerogative to do so, if it should so choose. Now, let me direct the court to a particular case that came from this court. And it involves the occurrence rule. And I'm not going to go into depth about the case, but it's lexicon v. Ace American. It's cited in the briefs. And I'll have to be very brief about this. But in the lexicon case, this court came down and made a distinction between kinds of damages that can occur on a construction project like this. In the lexicon case, the owner hired a subcontractor to build silos. And he was responsible for building all the silos. One of those silos later collapsed because of negligence. It, of course, destroyed the silo and caused collateral damage. This court found that the silo itself was not covered, but that the collateral damage was covered. In the case at Barr, and you can draw a close analogy between the lexicon case and what happened here, the plumber or the excavator, whoever it might be, had their own particular work. That was similar to building a silo in the lexicon case. In our particular case, either the foundation was bad or the plumbing was bad, which caused what I would argue is collateral damage, further damage to the house. Under the lexicon decision, the further damage to the house would be collateral damage and would be covered. And that's explained in the decision. And it's not that old. So I think that if you look at the lexicon case and you apply it to the facts in our case, you'll see that the further damages to the home are collateral in nature. And the damage to the plumber's work is the work that would be excluded. And I might add that if this case went off on a motion for summary, I'm sorry, a motion to dismiss. Excuse me. Did you cite lexicon in your briefs? No, Your Honor. The summary is cited in the defendant's briefs. This case went off on the denial of the opportunity to amend the complaint and based on the fact that the complaint was futile, which is basically a motion to dismiss on the pleadings. There were no facts in this case except for some scattered facts in the briefs. But we were in the process of doing discovery when the judge announced his decision on the motion to dismiss. So we don't have a factual base. And that's another reason that we believe the case should be sent back for further review to develop some of those facts and then approach this issue in a motion for summary judgment when everything is known. The second thing, and I'll cover this very quick. Well, the amendment was to use estoppel, right? That's correct, Your Honor. And that's the second part of what I want to speak to just for a second. But that was the core of the amended complaint, right? That's true, estoppel. Does Arkansas allow estoppel to extend coverage? The general rule is not to, but there are exceptions to that. If you look at the time case, you'll see that there are exceptions, but they're limited. And I think under that it clearly makes it a fact question. And that fact question should have been allowed to go forward under the time case. In addition, we have a case that's cited in our brief, the design case, which was decided by Judge Moody. And in that case, Judge Moody came to this court. This court approved Judge Moody's decision that there was no need in his case to go into the facts to try to apply estoppel. I think it's fairly clear from the decision that that could have happened had the judge wanted to do that. Thank you, Mr. Overstreet. Mr. Horton. May it please the court. Jonathan Horton, Wright, Lindsey, and Jennings for the defendants below Oklahoma Surety Company and Mid-Continent Casualty Company. We're the appellees in this case, Your Honor. This case turns on one pivotal issue, and that is whether Act 604 of 2011 can and should be applied retroactively. The defendants contend here, as they did below, that application of the act retroactively is incorrect and that the district court properly applied controlling Arkansas laws represented by the Essex case to this case and dismissed it. Counsel, would the principles of the Erie Doctrine enable this court to make its guess as to what the Arkansas Supreme Court would do and choose what the appellant is asking to apply, in essence, apply the statute retroactively? I don't think it would, Your Honor. And the reason is the Erie Doctrine allows a predictive inquiry only in cases where there is insufficient precedent or guidance from the state Supreme Court such that it has to make its own predictive inquiry of what would the Arkansas Supreme Court do if this case arose and were presented to it. Here, in this instance, there is guidance, controlling binding authority from the Arkansas Supreme Court that addresses this very issue. In fact, the Essex case is factually and legally directly on all four points with this case. You have, in the Essex decision, there was a claim by a contractor for indemnity from his insurance after he sold a home that was defectively constructed through the use of subcontractors. There, the Arkansas Supreme Court looked at that decision. It examined its own precedence on what the definition of occurrence should be. And I say examined its own precedence because the definition of occurrence is under ISO, excuse me, Insurance Service Office's forms that are used in commercial general liability policies. Since 1986, that definition has been defined as occurrence as an accident resulting from the same or substantially same exposure to conditions. Here, the court looked at that term accident in the definition of occurrence, applied 30 years of Arkansas precedent that described accident as something that was not foreseeable. Does the record in this case indicate that the motive of the state's legislature or the genesis of the new act was, in fact, the Essex decision, that it was a legislative response to the existing judicial precedent? There were a set of findings that were issued that talked about whether the act, I think the term that the act used was there was confusion over the issue. And what it purported, the stated purpose of the act purported to be that it allowed an insurance consumer to safely purchase commercial general liability insurance coverage at a fair price to insure against the risk of property damage or bodily injury resulting from faulty workmanship. Now, what the act does not include is a retroactivity clause. There's no emergency clause. There's nothing in Act 604 that suggests any indication that it should be applied retroactively. And in the briefing, there are two arguments advanced by the plaintiff that Act 604 should, in fact, be applied retroactively. The first is that it is remedial legislation, and we disagree with that. We think that's an incorrect characterization of remedial legislation. The two cases that were cited by the appellant in its reply, the Stewart v. Statler case and the older case, Harrison v. Matthews, both talk in terms of remedial statutes that do not disturb vested rights or create new obligations but only supply a new or more appropriate remedy. That's not the case with Act 604. Act 604 doesn't say previously you had a remedy. Now here is a new remedy or a remedy of a different kind. What it says is the definition of occurrence for policy sold in this state will now include faulty workmanship or specifically property damage or bodily injury resulting from faulty workmanship. So what you have is a fundamental change that changes the very essence of the insurance contract because now something that was previously not defined and specifically was not an occurrence as required to trigger coverage under these policies is now, under Act 604, going forward, going to be required to be part of a policy. And its use of the term shall, to me, suggests that it was intended to operate not retroactively but prospectively. The other opinion relied upon by the plaintiff is a case called Shelter Mutual Insurance v. Irvin, and it was a case that involved the interpretation of Act 335, which required underinsured motorist coverage, and said that unless expressly it declined, that would be implied as a matter of course. In Irvin, the loss and the related events occurred about one year after the act was effective. That's on Arkansas Reporter Volume 309, page 332, and in the Southwest Second Reporter Volume 831 at page 136. That case is completely inapplicable because there simply is no retroactivity issue. The statute was already in effect when the loss occurred. Contrast that to this case. In 2005, Oklahoma Surety Company issued this policy. The policy term was from October 5, 2005 to October 5, 2006. In 2006, J. McDaniel Construction sold the home upon which the claim was made by the Conrads. In 2006, the Conrads alleged that they notified J. McDaniel Construction Company of the defects in the foundation of the home that September. Three years later, in March 2009, plaintiff reports its claim to Oklahoma Surety Company, and in April 2009, Oklahoma Surety Company disclaimed coverage for the loss. The Conrads filed suit in 2009. All these events occurred two years prior to Act 604 being adopted by the Arkansas Assembly. So there's no indication that it ought to be applied retroactively either on its face or on its terms. In Irvin, didn't the policy issue before the statute change? Yes, the policy issued about five years before the statute change. I understand the occurrence didn't occur until after, but does that make any difference? I believe it does. In other words, isn't the argument that in Irvin they used the statute to change the policy, and that seems to be the argument here as well. Well, the difference, though, is that the loss and the underlying events occurred in Irvin following the change in the law. The change in the law was already effective. Here, the loss and everything that occurred occurred previous to the act being effective. And that is actually a good segue into the second point I'd like to make, and that is Arkansas law says that the default rule, if there's no express or unequivocal statement that a statute is to be applied retroactively, it is applied prospectively. And in the insurance context, that rule is even strengthened by a corollary that's represented by the State Farm Mutual Auto Insurance Company versus Henderson decision, which says that we will, we as courts, Arkansas courts, refuse to apply retroactively a change in the law if it would deprive an insurer of a defense to coverage that would have otherwise existed under the previous law. So under both the normal statutory construction as well as under the law specifically applicable to insurance policies, the result is prospective application. Now, of course, we argue for a third reason for avoiding retroactive application, and that's because we think it violates the contracts clause. But I'm not sure that this court needs to even go that far, because under the Arkansas law that applies, it's simply prospective only. That leaves the plaintiff with the Essex rule. How about on the amended complaint and the using estoppel to extend coverage? He suggests the time case creates an exception to that general rule. What's your response to that? Your Honor, I believe that Design Professionals Insurance Inc., this court, recognized that the time insurance versus grades does not square with prior or subsequent Arkansas law by the Arkansas Supreme Court. So we have to look at the facts of that case and say, does this rule even apply? I think probably not. The time case really seems to be more in line with a body of Arkansas law that involves misrepresentations or misstatements by an agent and refusing to allow an insurer to avoid coverage where an agent or someone has made misrepresentations in the application process. In time, Ms. Graves was a cancer patient. She had health insurance coverage. She was told by their agent that if she changed insurance companies, her treatments would be covered. When they weren't, she tried to hold time insurance accountable for that. And the Arkansas court said that, in fact, they should be held accountable. So I apologize, Your Honor, if I may finish my remark on this point. The time appears to be an aberrant decision from the other cases, the People's Insurance Company case and the Harrison, I think is one of them. Yes. And the Harrison versus St. Paul decision. Thank you, Mr. Horton. Does Mr. Overstreet have any time remaining? He doesn't, Your Honor. Mr. Overstreet, we'll give you one minute. We asked you several questions, so we'll give you a minute of rebuttal. I hope you asked what I would like to say. No, I'm saying we wanted to give you a minute because we have asked you questions during your limited time on the record. Correct. There's two issues here, and I want to make it clear that I am not arguing that Act 609 has specific retroactivity. But if you look at the legislative history, that bill, when it's signed, had explaining language in the front of it, and that's contained in our briefing documents. And it gave the purpose for Act 609, which specifically was to cure up the exact question that existed by Essex. And that's significant. While I admit the statute is not retroactive, that has to be a consideration in what anybody would think of the Essex rule. I believe he's correct, and I believe the judge is correct when he talks about in the one case that was mentioned that it was allowed to change a contract retroactively. And then the last point, the two cases that I cited and alluded to, and both coming from this court, I think make it clear that there are exceptions to the estoppel rule in Arkansas. And I believe the courts recognize that. Judge Moody recognized that. The time case said that. And I think there's probably even some more law out there on that. Thank you, Mr. Overstreet. Thank you. The court thanks both counsel for your presence and argument this morning.